UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-00816

| | |
|---|---|
| AKASH PATEL and AARON GARBUS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) COMPLAINT and DEMAND FOR JURY |
| | ) TRIAL |
| ROBINSON VOLUNTEER FIRE | ) |
| DEPARTMENT & RESUCE, INC. and | ) |
| DOUGLAS JERNIGAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiffs Akash Patel ("Patel") and Aaron Garbus ("Garbus") (collectively "Plaintiffs"), by and through their counsel, bring claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, against Robinson Volunteer Fire Department & Rescue, Inc., ("RVFD") and Douglas Jernigan ("Jernigan") (collectively "Defendants"). Patel additionally brings an individual claim for violations of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3). Plaintiffs allege, upon personal belief as to themselves and their own acts, and as for all other matters, upon information and belief, and based upon the investigation made by their counsel, as follows:

## NATURE OF PLAINTIFFS' CLAIMS

1.  This lawsuit seeks to recover unpaid overtime wages and statutory penalties for Plaintiffs who performed more than 40 hours of work on Defendants' behalf in a workweek and were not properly compensated for their overtime wages.

2.  Patel brings an individual FLSA claim against Defendants pursuant to 29 U.S.C. § 215(a)(3) alleging unlawful retaliation under the FLSA for terminating Patel's employment

because he engaged in protected activity by protesting Defendants' violations of the FLSA.

## THE PARTIES

3. Patel is an adult individual who is a resident of Oakboro, North Carolina.

4. Garbus is an adult individual who is a resident of Matthews, North Carolina.

5. RVFD is a domestic non-profit corporation registered and in good standing in the state of North Carolina.

6. Jernigan is the Fire Chief of RVFD. In this capacity, Jernigan is involved in the day-to-day business operations of RVFD. Jernigan has the authority to make decisions regarding wage and hour issues, including compensation practices and policies for Plaintiffs. At all relevant times, Jernigan acted and had responsibility to act on behalf of, and in the interests of, RVFD in devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees, including the unpaid overtime wage issues raised in this lawsuit.

## JURISDICTION AND VENUE

7. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for claims brought under the FLSA, 29 U.S.C. §§ 201 *et seq.*

8. This Court has personal jurisdiction because RVFD's primary place of business is located in Mecklenburg County, which is within this judicial district. Jernigan is also a resident of Mecklenburg County, North Carolina.

9. Venue is proper in this judicial district because RVFD's primary place of business is in this district, Jernigan is a resident of Mecklenburg County, and because the unlawful acts or omissions alleged occurred in Mecklenburg County, North Carolina.

## COVERAGE ALLEGATIONS

10. At all times hereinafter mentioned, Defendants have been an employer within the

meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

13. At all times hereinafter mentioned, Plaintiffs were an employee within the meaning of the FLSA, 29 U.S.C. § 203(e).

14. At times hereinafter mention, Plaintiffs were an employee engaged in interstate commerce within the meaning of 29 U.S.C. § 207(a). During their employment with Defendants, Plaintiffs operated equipment produced and transported in interstate commerce, traveled on interstate highways, and responded to emergencies on waterways.

## PLAINTIFFS' FACTUAL ALLEGATIONS

15. RVFD is a volunteer fire department that provides firefighting services to parts of Mecklenburg County, North Carolina. RVFD's Board of Directors and Officers are selected independently of government decision-makers. RVFD hires employees directly and at its own discretion.

16. Plaintiffs were paid an hourly rate of pay and were non-exempt employees with the meaning of the FLSA.

3

17. Patel began his employment with Defendants as a volunteer Firefighter/EMT in or about August 2014.  In or about April 2016, Patel became a paid EMT.  In or about 2017, Patel became an EMT/Driver.  Defendants employed Patel as an EMT/Driver until August 20, 2024.

18. Garbus began his employment with Defendants on or about July 25, 2016 and held the Firefighter/EMT role.  Garbus voluntarily terminated his employment on September 23, 2023.

19. Defendants employed Plaintiffs during the FLSA's statutory period preceding the filing of this Complaint.

20. Throughout their employment with Defendants, Plaintiffs received monthly paychecks from Defendants that did not properly record or compensate them for all overtime hours that they worked.

21. From January 2021 to September 2021, Defendants scheduled employees to work one of two shifts, day shift or night shift.  Employees were, however, permitted to work both shifts.  Employees working the day shift were scheduled to work a 10-hour shift from either 7:00 a.m. to 5:00 p.m. or 9:00 a.m. to 7:00 p.m.  Employees working the night shift were scheduled to work a 13-hour shift either from 6:00 p.m. to 7:00 a.m. or 7:00 p.m. to 8:00 a.m.

22. In or about October 2021, Defendants added an additional day and night shift.  The additional day shift went from 8:00 a.m. to 6:00 p.m.  The additional night shift went from 7:00 p.m. to 7:00 a.m.

23. In or about August 2022, Defendants changed the scheduled start times and lengths of the day and night shifts.  Employees working the day shift are scheduled to work an 11-hour shift from either 7:00 a.m. to 6:00 p.m. or 8:00 a.m. to 7:00 p.m.  Employees working the night shift are scheduled for 13 hours from either 6:00 p.m. to 7:00 a.m. or 7:00 p.m. to 8:00 a.m.

24. During the relevant time period to this lawsuit, Patel worked 4–5 days per week on

4

either the day or night shift and sometimes worked both. Because Patel typically worked 4–5 10- or 13-hour shifts per week, he worked more than 40 hours per workweek during one of more weeks during the relevant time period. However, in or about November 2023, Patel reduced his scheduled hours to about 25 hours per week.

25. During the relevant time period to this lawsuit, Garbus worked 4–6 days per week on either the day or night shift and sometimes both. Because Garbus typically worked 4–6 10- or 13-hour shifts per week, he worked more than 40 hours per workweek during one or more weeks during the relevant time period.

26. Up until January 2023, Defendants did not pay Firefighters overtime at the proper overtime premium rate of pay. Instead, Defendants compensated Firefighters at their hourly rate of pay for all hours worked.

27. Defendants violated the FLSA by failing to properly compensate Plaintiffs at their overtime premium rate of pay for all hours worked in excess of 40 in a workweek.

28. However, on or about January 9, 2023, Defendants implemented a "variable rate" overtime payment scheme. A true and accurate copy of a letter Jernigan sent to Plaintiffs explaining the "variable rate" overtime payment scheme is attached to this Complaint as Exhibit 1.

29. Under Defendants' "variable rate" overtime payment scheme, Plaintiffs were required to work 171 hours in a thirty-day month, 171 hours in a 31-day month, and 160 hours in February to be eligible to earn overtime.

30. Defendants' "variable rate" overtime payment scheme violated the FLSA by failing to compensate Plaintiffs at the proper overtime premium rate for all hours worked in excess of 40 in each workweek during their employment.

5

31. Defendants' violations of the FLSA were willful. Defendants knew, and were aware at all times, that Plaintiffs were not paid for all overtime hours worked because Plaintiffs complained to Defendants about not being paid overtime correctly in violation of the FLSA. Defendants' officers and board members responded to these complaints by stating that Defendants were "properly" paying overtime under the FLSA. Defendants' officers and board members have additionally held meetings, with the most recent meeting held approximately one month prior to the filing of this Complaint, to advise employees that Defendants were paying overtime "correctly" in response to complaints from Plaintiffs.

32. The conduct alleged above reduced Defendants' labor and payroll costs.

33. Defendants willfully failed to pay Plaintiffs the overtime premium required by the FLSA.

34. Plaintiffs were subject to Defendants' uniform policies and practices and were victims of Defendants' scheme to deprive them of overtime compensation. As a result of Defendants' improper and willful failure to pay Plaintiffs in accordance with the requirements of the FLSA, Plaintiffs suffered lost wages and other related damages.

**Defendants terminated Patel's employment because he complained about unpaid overtime wages**

35. On January 25, 2024, Patel texted Mike Wade ("Wade"), one of RVFD's Board Members, stating, "I was going to bring up overtime pay but feels like that will just make me a target to get fired." Wade did not respond.

36. On June 13, 2024, Patel texted Wade stating, "I feel like [Jernigan] is trying to push me out of [RVFD]. He cut my pay without giving me a heads up." Wade responded stating, "Wow. I am sorry to hear that." Patel then texted Wade, "I am going to bring up overtime pay in the next [board] meeting. I'm tired of keeping my mouth shut about it." Wade responded stating,

6

"Man I don't even know what to say."

37. On June 26, 2024, Patel texted Wade about the upcoming board meeting, stating, "I would like to have a closed session without [Jernigan] being there to talk about overtime pay." Wade responded stating that he was not sure if he would attend the meeting.

38. On June 27, 2024, RVFD held its monthly board meeting. Mike Chaffin ("Chaffin"), RVFD's Vice President of the Board of Directors, stated there would be a closed session to discuss overtime pay. Closed session meetings are only for board members but Chaffin permitted Jernigan to stay. During the closed session meeting, Patel complained about not receiving overtime pay. Jernigan told the board members that RVFD did pay overtime. Patel then gave each board member a copy of the January 9, 2024 letter Jernigan sent explaining the "variable rate" payment scheme. Patel then told the board members that he totaled the amount of unpaid overtime wages he was owed over the past three years. Jernigan became angry at Patel for complaining about unpaid overtime and stated that Patel "was doing this because he was not satisfied." Patel told the board members that he was not the only Firefighter who was owed overtime and that he was consulting an attorney. Chaffin responded stating that Jernigan should consult an attorney as well and then ended the meeting.

39. Defendants held another board meeting sometime between the June board meeting and August 19, 2024. However, Patel was not invited to attend. Upon information and belief, Patel's complaint about unpaid overtime and terminating Patel's employment were discussed during the board meeting.

40. On August 20, 2024, Jernigan arrived at the RVFD station and asked Patel to come into his office. Jernigan then handed Patel a separation agreement and informed Patel his employment was being terminated. Jernigan did not provide Patel with a reason as to why his

7

employment was terminated. However, the separation agreement provide Patel with a payment for unpaid overtime in the amount Patel said he was owed during the June 2024 board meeting.

41. Defendants terminated Patel's employment because he complained about unpaid overtime.

**COUNT I:**
**(Failure to Pay Overtime Wages Under the FLSA for all Overtime Hours Worked)**

42. Plaintiffs realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

43. Defendants operate an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

44. FLSA Section 207(a)(1) states that an employee must be paid an overtime rate, equal to at least 1½ times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

45. Throughout the relevant period, Defendants violated the FLSA by routinely suffering or permitting Plaintiffs to work overtime hours each week without paying them premium overtime pay at the correct overtime pay rate and for the actual number of overtime hours worked.

46. Throughout the relevant period, Plaintiffs each worked in excess of 40 hours per week during one or more workweeks but were not paid an overtime premium of 1½ times their regular hourly rate for all of those additional hours.

47. Defendants' actions described in this Complaint violated the FLSA.

48. Defendants' actions were willful and not in good faith.

49. Plaintiffs have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime wages owed for time worked in excess of 40 hours per week from which Defendants derived a direct and substantial benefit.

50. Defendants are liable to Plaintiffs for actual damages, liquidated damages, and equitable relief pursuant to 29 U.S.C. § 216(b) as well as reasonable attorneys' fees, costs, and expenses.

## COUNT II:
### (FLSA Retaliation – Individual Action)

51. Patel realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

52. Defendants violated 29 U.S.C. § 215(a)(3) by unlawfully terminating Patel's employment in retaliation for engaging in activity protected by the FLSA when he complained about unpaid overtime wages.

53. Patel suffered harm as a result of Defendants' retaliatory actions.

54. Defendants' violation of the FLSA was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following relief:

A. An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;

B. An Order pursuant to Section 15(a)(3) of the FLSA finding Defendants liable for unlawful retaliation and awarding Patel reinstatement, lost wages, liquidated damages, and all other available relief;

C. An Order awarding the costs of this action;

9

Case 3:24-cv-00816   Document 1   Filed 09/09/24   Page 9 of 10

D. An Order awarding reasonable attorneys' fees:

E. An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

F. An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated: September 9, 2024

Respectfully Submitted,

s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
Email: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiffs*
